**08 CV 1968**

Cox Padmore Skolnik & Shakarchy LLP
Steven D. Skolnik (SS-1121)
630 Third Avenue, 19th Floor
New York, NY 10017
Tel: (212) 953-6633
Fax: (212) 949-6943
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
ECF CASE**



RECEIVED FEB 27 2008 U.S.D.C. S.D. N.Y. CASHIERS

----------------------------------------x
ILIR TOPALLI,

                Plaintiff,

                v.

ALBERT EINSTEIN COLLEGE OF MEDICINE
OF YESHIVA UNIVERSITY; YESHIVA
UNIVERSITY; MARK F. MEHLER; AND
ANNE ETGEN,

                Defendants.
----------------------------------------x

CASE NUMBER:

COMPLAINT

      Plaintiff Ilir Topalli (hereinafter, "Dr. Topalli" or "Plaintiff") states his complaint against defendant Albert Einstein College of Medicine of Yeshiva University (hereinafter, "AECOM"), defendant Yeshiva University (hereinafter "Yeshiva") (AECOM and Yeshiva being sometimes together referred to as the "Institutional Defendants"), defendant Mark F. Mehler (hereinafter, "Dr. Mehler") and Anne Etgen, Ph.D. ("Dr. Etgen") (the Institutional Defendants, Dr. Mehler and Dr. Etgen being sometimes together referred to as the "Defendants"), as set forth hereinafter:

## PARTIES, JURISDICTION AND VENUE

1) Plaintiff is an individual who resides and is domiciled in Manhattan at 160 East 91st Street.

2) Upon information and belief, defendant Yeshiva is a legally organized institution of higher education with campuses in Bronx and New York Counties, New York, and with a principal place of business and residence in Bronx County, New York at 1165 Morris Park Avenue, Bronx, New York 10461. This Court has personal jurisdiction over Yeshiva.

3) Upon information and belief, AECOM is a legally organized not-for-profit entity that *inter alia*, operates a medical school and a hospital with a principal place of business and residence in Bronx County at 1300 Morris Park Avenue, Bronx, New York 10461. AECOM is one of Yeshiva's graduate learning, teaching and research institutions. This Court has personal jurisdiction over AECOM. Yeshiva and AECOM are related entities.

4) Upon information and belief, Dr. Mehler is an individual with a business address in Bronx, County, New York who resides and is domiciled in Westchester County, New York, who is a medical doctor and the chair of AECOM's Department of Neurology; a professor in AECOM's Department of Neurology, Department of Neuroscience and Department of Psychiatry and Behavioral Sciences; and the director of AECOM's Institute for Brain Disorders and Neural Regeneration. This Court has personal jurisdiction over Dr. Mehler.

5) Upon information and belief, Dr. Etgen is an individual with a business address in Bronx, County, New York who resides and is domiciled in Bronx or Westchester County, New York, who is a faculty member and professor in AECOM's Department of Neurology and Department of Neuroscience, who was AECOM's minority affairs director during all times relevant to this

2

action, and who supervised Dr. Topalli between 1997 and 2004. This Court has personal jurisdiction over Dr. Etgen.

6) The Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. 1331 and 1343(4); 29 U.S.C. Section 201 *et seq.*; and 29 U.S.C. Section 216(b). The Court has jurisdiction over plaintiff's pendent state and local law claims, pursuant to 28 U.S.C. Section 1367.

7) Venue is proper because the events giving rise to the action occurred within this jurisdiction.

## STATEMENT OF FACTS

8) Dr. Topalli herein reasserts and incorporates by reference the allegations set forth in paragraphs 1 to 7.

9) Upon information and belief, Dr. Mehler is employed by Yeshiva and AECOM, and at all times relevant herein, acted both in his individual capacity and as a director, officer and/or agent of AECOM and Yeshiva vested with authority by them.

10) Upon information and belief, Dr. Etgen is employed by Yeshiva and AECOM, and at all times relevant herein, acted both in her individual capacity and as an officer and/or agent of AECOM and Yeshiva vested with authority by them.

11) Dr. Topalli is a research scientist who has engaged and is engaged in research regarding diseases of the human body. He is a Ph.D with a graduate degree from AECOM in neuroscience. In the period 1997-2005, Dr. Topalli was a student and employee of AECOM. AECOM discharged him in or about April 2005. Thereafter, Dr. Topalli was employed by non-party St. Luke's-Roosevelt Hospital and then by non-party Multiple Sclerosis Research Center of New York, located in New York, New York ("MSRC").

12) From April 1, 2006 until January 26, 2007, Dr. Topalli was employed by MSRC. Non-party Saud Sadiq, M.D. ("Dr. Sadiq") was an officer and Dr. Topalli's supervisor at St. Luke's-Roosevelt Hospital, and was an officer, director and Dr. Topalli's supervisor at MSRC.

## FIRST CAUSE OF ACTION: TITLE VII DISCRIMINATION

13) Dr. Topalli repeats, realleges as if set forth fully herein, and incorporates by reference the allegations set forth in paragraphs 1 through 12.

14) Based on information and belief, in the wake of September 11, 2001, Yeshiva and AECOM faculty engaged in tacit religious intolerance of Muslim persons, and Yeshiva and AECOM turned an institutional blind eye to said intolerance. This behavior devolved into flagrant discrimination against persons whose Muslim religious identity and consciousness became known. Dr. Topalli was subjected to such discrimination.

15) Based on information and belief, since September 11, 2001, AECOM has routinely posted the faces of Muslim employees and students at the front entrance of the building, and submitted them to unreasonable searches in an attempt to vilify and ostracize them. AECOM does not routinely subject non-Muslims to such treatment. Dr. Topalli was subjected to such discrimination.

16) AECOM has written anti-discrimination policies that it ignores in practice.

17) Based on information and belief, Dr. Anne Etgen, Yeshiva and AECOM's faculty member and then minority affairs director, routinely abuses her authority. Dr. Etgen is notorious for discriminating against minorities, including, but not limited to, Muslim staff and students. Dr. Etgen flagrantly engages in favoritism of women over men. During all times relevant to this action, Dr. Etgen supervised Dr. Topalli and was minority affairs director.

4

18)     Between 2001 and 2005, Dr. Topalli engaged in protected activities, pursuant to Title VII, as well as pursuant to Yeshiva and AECOM's policies and procedures.

19)     In August/Sept 2001, Dr. Topalli expressed concern to Cecile Brown, Director of Counseling, that he was worried that Dr. Etgen would retaliate against him if she learned that he was a practicing Muslim, or if she learned that he would have to honor his Islamic religious obligation to engage in certain observances on the one year anniversary of his father's death.

20)     In 2001, Dr. Topalli requested religious accommodations of AECOM. The requests were summarily denied. In particular, he requested of his supervisor Dr. Anne Etgen a leave of absence to make a religious observation in honor of the one-year anniversary of his father's death. Dr. Etgen became agitated when she learned that he needed to make the religious observance pursuant to Islamic law. She flagrantly opposed his request for a religious accommodation, and penalized him for going into to mourning according to his religious prescription.

21)     In 2001-2005, Dr. Topalli lodged discrimination and retaliation complaints against his supervisor Dr. Anne Etgen. In particular, he complained of her anti-Muslim animus. He also complained that she subjected him to religious discrimination. Then, he complained that she retaliated against him. The Institutional Defendants failed to investigate his complaints, and took no steps to remediate and to stop the discrimination and retaliation, despite their written handbook anti-discrimination policy, which AECOM routinely invokes and enforces on behalf of non-Muslims.

22)     Yeshiva and AECOM's' leadership tolerates the flagrant and outspoken anti-Muslim sentiments of Dr. Etgen. Based on information and belief, culpable leadership includes, but is not limited to, the following officials: (a) Chairman of the Department of Neuroscience Dr. Don

Faber; (b) Chairman of the Department of Pathology Dr. Michael Prystowsky; (c) Associate Dean of Students Dr. James David, M.D., who has gone so far as to defend Dr. Etgen and to threaten retaliation against Dr. Topalli for persisting in his complaints against her; and (d) Dr. Mehler, who was at all times aware of Dr. Topalli's discrimination complaints against Dr. Etgen, but who did nothing to abate the discrimination.

23) Yeshiva and AECOM failed to provide anti-religious discrimination training to the individuals who have direct or indirect supervisory authority over Dr. Topalli. During all times relevant to this action, Dr. Topalli directly reported to Dr. Etgen (until mid-2004), and indirectly reported to Drs. Faber, Prystowsky and David.

24) Yeshiva and AECOM fired Dr. Topalli for reasons having to do with his Muslim ethnicity.

25) As a result of Yeshiva's, AECOM's, Dr. Mehler's and Dr. Etgen's acts and omissions, Dr. Topalli suffered a delay in his career advancement; a derailment of his scientific career; humiliation, as well as pecuniary losses.

26) In December 2005, Dr. Topalli filed a "continuing action" charge of discrimination and retaliation against named respondents AECOM and Yeshiva; namely, *Dr. Ilir Topalli adv. Albert Einstein College of Medicine; Yeshiva University*, EEOC Charge No. 160-2006-01102. The charge was filed with the Equal Employment Opportunity Commission ("EEOC").

27) The EEOC issued a determination dated September 20, 2007. The determination jointly refers to Yeshiva and AECOM as "Respondent."

28) The EEOC determination held, *inter alia*, as follows: "Based on the evidence reviewed during the course of this investigation, it is more likely than not that Respondent engaged in retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended. The record

6

shows that Respondent retaliated against the Charging Party in that Respondent denied him an employee identification card and negatively interfered with his professional dealings in connection with future employers and/or other institutions for having complained of religious and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended." The determination also held as follows: "The record further shows that Respondent failed to provide a prompt and/or an effective remedy after Charging Party engaged in a protective activity in having opposed employment discrimination covered under Title VII of the Civil Rights Act of 1964, as amended."

29) On December 1, 2007, Dr. Topalli received a right to sue notice from the EEOC, which notice was dated November 28, 2007.

30) Yeshiva and AECOM jointly and severally violated Dr. Topalli's civil rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000-e (2)(a), §2000-e *et seq.*, which prohibits discrimination based on, inter alia, religion and national origin. This claim is filed within 90 days following Plaintiff's receipt of the right to sue notice from the EEOC.

## SECOND CAUSE OF ACTION:
## TITLE VII RETALIATION

31) Dr. Topalli herein repeats, reasserts as if set forth fully herein, and incorporates by reference the allegations of paragraphs 1 to 30.

32) AECOM unreasonably limited Dr. Topalli's access to facilities in an attempt to frustrate his academic and professional aspirations. AECOM's four-year long refusal to reissue Dr. Topalli's identification card followed his repeated Title VII protected activities. In March 2005, one faculty member attempted to assist Dr. Topalli by written letter and by going in person to the security department to request an identification card on behalf of Dr. Topalli. AECOM refused the faculty's members efforts, despite the fact that Dr. Topalli was entitled to have a valid

AECOM identification card (hereinafter "ID") pursuant to the provisions of AECOM's handbook. As a result, Dr. Topalli had sporadic access to the laboratory, and was compromised in his ability to conduct and complete scientific experiments. AECOM's repeated refusal to re-issue Charging Party's identification card constituted a form of discipline against him.

33) From 2001 through December 2003, Yeshiva, AECOM and Dr. Etgen engaged in a campaign to expel Dr. Topalli from the doctoral program. Yeshiva, AECOM and Dr. Etgen went so far as to dissuade a faculty member from serving on the committee of professors whose role it was to defend Dr. Topalli's doctoral thesis and to decide his eligibility for a Ph.D. degree. Ultimately, Dr. Topalli was awarded a Ph.D., despite these vigorous attempts to provoke his failure.

34) AECOM has policies that warrant an investigation of discrimination complaints. During Dr. Topalli's employment at Yeshiva and AECOM, he repeatedly complained of discrimination to officials, including but not limited to Dr. Etgen and Dr. Mehler, together with non-parties Chairman of the Department of Neuroscience Dr. Don Faber, Chairman of the Department of Pathology Dr. Michael Prystowsky and Associate Dean of Students Dr. James David, M.D. None of these officials reported or sought an investigation of Dr. Topalli's complaints. They failed to abate the discrimination.

35) Yeshiva and AECOM fired Dr. Topalli for reasons having to do with his efforts to oppose discrimination.

36) Yeshiva, AECOM and Dr. Mehler dissuaded third parties from either hiring Dr. Topalli or engaging in business relations with him. In Spring 2005, AECOM dissuaded non-party The State University of New York ("SUNY") from entering into a leasehold contract with Alison Pharmaceuticals ("AP"), a company with which Dr. Topalli had a business affiliation. AP had

attempted to lease laboratory and office space from SUNY. Based on information and belief, AECOM contacted SUNY, and cautioned it not to enter into a leasehold agreement with AP due to Dr. Topalli's affiliation. SUNY backed away from the imminent leasehold agreement.

37) In Summer 2005, Dr. Topalli secured an appointment at non-party St. Luke's-Roosevelt Hospital ("SLRH") in its research departments. On the eve of the appointment, AECOM telephoned SLRH, and passed a rumor that Dr. Topalli is not a United States citizen, and has "visa issues." To the contrary, Dr. Topalli is a born and bred United States citizen. This was one of several attempts to jeopardize the professional security of Dr. Topalli.

38) In September 2006 to January 2007, Yeshiva, AECOM and Dr. Mehler took improper and retaliatory actions that lead to his improper job termination by his then employer.

39) As a result of Yeshiva's, AECOM's, Dr. Etgen's and Dr. Mehler's acts and omissions, Dr. Topalli suffered a delayed professional advancement; a derailment of his scientific career; humiliation, as well as pecuniary losses.

40) Yeshiva and AECOM violated Dr; Topalli's civil rights under Title VII, 42 U.S.C. §2000-e 3(a), which prohibits retaliation against an individual who engages in Title VII protected activities. This claim is filed within 90 days following Plaintiff's receipt of the right to sue notice from the EEOC.

### THIRD CAUSE OF ACTION:
### NEW YORK STATE EXECUTIVE LAWS §296

41) Dr. Topalli herein repeats, reasserts as if set forth fully herein, and incorporates by reference the allegations of paragraphs 1 to 40.

42) For the reasons set forth in support of the Title VII claim, Yeshiva, AECOM, Dr. Mehler and Dr. Etgen jointly and severally violated Dr. Topalli's human rights under New York State

Executive Laws § 296 *et seq.* Said body of law prohibits discrimination against persons because of their religious and national origin.

43) For the reasons set forth in support of the Title VII claim, Yeshiva, AECOM, Dr. Mehler and Dr. Etgen jointly and severally violated Dr. Topalli's human rights under New York State Executive Laws § 296 *et seq.* Said body of law prohibits retaliation against persons who engage in protected activities under said statute.

44) Dr. Topalli is a man.

45) Dr. Etgen favored women over men, and in this manner discriminated against Dr. Topalli. Dr. Etgen engaged in favoritism as to work assignments and privileges of employment. She more harshly disciplined men as compared to women. She more strictly enforced rules against men as compared to women. Several of Dr. Topalli's colleagues were witness to Dr. Etgen's sex discrimination.

46) Dr. Etgen's actions were authorized by Yeshiva and AECOM.

47) Further, between 2000 and 2005, Dr. Topalli repeatedly complained that he was the subject of discrimination. Neither Yeshiva nor AECOM investigated his complaints, despite their routine practice of promptly investigating discrimination complaints that are lodged by women.

48) Yeshiva, AECOM and Dr. Etgen are jointly and severally are liable to Dr. Topalli for violating his human rights under New York State Executive Laws § 296 *et seq.*, which prohibits, *inter alia*, discrimination because of sex.

### FOURTH CAUSE OF ACTION:
### N.Y.C. ADMIN. LAWS §8-107

49) Dr. Topalli herein repeats, reasserts as if set forth fully herein, and incorporates by reference the allegations of paragraphs 1 to 48.

50) For the reasons set forth in support of the Title VII claim and New York State Executive Laws claim, Yeshiva, AECOM, Dr. Mehler and Dr. Etgen are jointly and severally are liable to Dr. Topalli for violating his human rights under N.Y.C. Admin. Laws §8-107 *et seq.* The N.Y.C. Admin. Laws §8-107 *et seq.* prohibit discrimination against persons because of their religion, national origin and/or sex.

51) For the reasons set forth in support of the Title VII claim and New York State Executive Laws claim, Yeshiva, AECOM, Dr. Mehler and Dr. Etgen are jointly and severally are liable to Dr. Topalli for violating his human rights under N.Y.C. Admin. Laws §8-107 *et seq.*, which prohibits retaliation against persons who engage in protected activities under said statute.

52) Plaintiff has mailed a copy of the instant complaint to the New York City Commission of Human Rights and to the Office of the Corporation Counsel of the City of New York, thereby satisfying the statutory notice requirements under Section 8-502 of the New York City Administrative Code.

### FIFTH CAUSE OF ACTION: FAIR LABOR STANDARDS ACT

#### Claim for Unpaid Wages for 2005

53) Dr. Topalli repeats, reasserts as if fully set forth herein, and incorporates by reference paragraphs 1 to 52.

54) In 2005, Yeshiva and AECOM jointly and severally were Dr. Topalli's employer. On one or more days in 2005, particularly March and April 2005, Dr. Topalli performed work at AECOM, and AECOM omitted to remit wages/salary to him in compensation for his labor. His supervisor was aware of the situation. Dr. Topalli requested monetary compensation for his labor. Yet AECOM willfully and intentionally omitted to correct the omission.

55)     Every biweekly period, AECOM contributed a percentage of Dr. Topalli's biweekly salary to the 401k plan. Based on information and belief, AECOM matched a percentage of the elected contribution. The calculations of the elected and matching contributions depended on the amount of salary AECOM remitted to Topalli.

56)     Yeshiva and AECOM jointly and severally are liable to Dr. Topalli for unpaid wages/salary, together with a federal penalty of 100% of said amount, pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), Section 7, 29 U.S. C. § 206, 206(a) and 207, which concerns, *inter alia*, minimum wages.

## SIXTH CAUSE OF ACTION:
## NEW YORK LABOR LAWS

### Claim for Unpaid Wages for 2005

57)     Dr. Topalli repeats, reasserts as if fully set forth herein, and incorporates by reference paragraphs 1 to 56.

58)     Dr. Topalli was employed within the meaning of New York Labor Law ("N.Y. Labor L.") §§ 2 and 651.

59)     Yeshiva and AECOM jointly and severally were Dr. Topalli's employer, pursuant to N.Y. Labor L. §§ 2(6), 190(3) and 651(6).

60)     For the reasons set forth in support of the FLSA claim, Yeshiva and AECOM jointly and severally are liable to Dr. Topalli for the unpaid wages plus an amount of liquidated damages that equals 25% of the unpaid wages, together with prejudgment interest, pursuant to the N.Y. Labor L. §652 and applicable regulations governing the right to minimum wages.

## SEVENTH CAUSE OF ACTION:
## BREACH OF CONTRACT

61) Dr. Topalli repeats, reasserts as if fully set forth herein, and incorporates by reference paragraphs 1 to 60.

62) In 2001, Dr. Topalli's AECOM ID reached its expiration date, and Dr. Topalli requested a new one from the security department. AECOM refused to reissue Dr. Topalli's ID. AECOM persisted in its refusal, despite Dr. Topalli's and a supervisor's repeated requests for re-issuance of the ID, and despite the terms of its handbook policy, which entitled him to an ID.

63) In 2002, Dr. Topalli was entitled to have a valid ID pursuant to the provisions of AECOM's handbook policy. In 2003, he was entitled to have an ID, pursuant to the provisions of AECOM's handbook policy. In 2004, he was entitled to have an ID, pursuant to the provisions of AECOM's handbook policy. In 2005, he was entitled to have an ID, pursuant to the provisions of AECOM's handbook policy.

64) Further, between 2000 and 2005, Dr. Topalli repeatedly complained that he was the subject of religious and ethnic discrimination by supervisor Dr. Anne Etgen. He also complained that she refused to grant his reasonable requests for a religious accommodation. In addition, he complained that he was subjected to retaliation. Neither Yeshiva nor AECOM investigated Dr. Topalli's complaints, despite their institutional policies and procedures. Further, AECOM and Yeshiva omitted to report, to oppose and to abate national origin and religious discrimination and retaliation by other AECOM officials.

65) Yeshiva and AECOM are jointly and severally are liable to Dr. Topalli for breach of contract, including, but not limited to the handbook policy, pursuant to state law.

## EIGHTH CAUSE OF ACTION:
## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS

66)     Dr. Topalli repeats, realleges as if set forth fully herein, and incorporates by reference the allegations set forth in paragraphs 1 through 65.

67)     AECOM dissuaded third parties from either hiring Dr. Topalli or engaging in business relations with him.

68)     In Spring 2005, AECOM dissuaded non-party SUNY from entering into a leasehold contract with AP, a company with which Dr. Topalli had a business affiliation. AP had attempted to lease laboratory and office space from SUNY. Based on information and belief, AECOM contacted SUNY, and cautioned it not to enter into a leasehold agreement with AP due to Dr. Topalli's affiliation. SUNY backed away from the imminent leasehold agreement.

69)     In Summer 2005, Dr. Topalli secured an appointment at non-party SLRH in its research departments. On the eve of the appointment, AECOM telephoned SLRH, and passed a rumor that Dr. Topalli is not a United States citizen, and has "visa issues." To the contrary, Dr. Topalli is a born and bred United States citizen. This was one of several attempts to jeopardize the professional security of Dr. Topalli.

70)     In September 2006 thorough January 2007, Dr. Topalli's then employer denied Dr. Topalli privileges and professional courtesies otherwise available because of tortious acts and omissions by AECOM, Yeshiva and Dr. Mehler.

71)     Dr. Topalli has been damaged and suffered injury and continues to suffer damages and injury as a result of Dr. Mehler, Yeshiva and AECOM's tortious acts and omissions. In committing these tortious acts and omissions, Mehler, Yeshiva and AECOM acted unethically, maliciously, for an improper purpose and/or illegally in connection with the foregoing intentional interference with business relations.

72) Dr. Mehler, Yeshiva and AECOM are jointly and severally liable to Dr. Topalli for intentional interference with business relations.

### NINTH CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY

73) Dr. Topalli repeats, realleges as if set forth fully herein, and incorporates by reference the allegations set forth in paragraphs 1 through 72.

74) At all times relevant to this action, Dr. Etgen was AECOM's minority affairs director, pursuant to which position she, Yeshiva and AECOM owed a joint and several fiduciary obligation to Dr. Topalli, who himself was and is a Muslim man of Albanian descent.

75) Yeshiva, AECOM and Dr. Etgen jointly and severally violated their fiduciary obligation to Dr. Topalli by Dr. Etgen's acts and omissions, including, but not limited to, the following: Dr. Etgen's continual efforts to frustrate and to retard Dr. Topalli's academic and career opportunities at AECOM; her failure to enforce AECOM's anti-discrimination policies on Dr. Topalli's behalf; her intentional religious, national origin and sex discrimination and retaliation against Dr. Topalli; and her omission to report, to oppose and to abate discrimination and retaliation by AECOM officials.

76) At all times relevant to this action, Yeshiva and AECOM were complicit in Dr. Etgen's acts and omissions.

77) At all times relevant to this action, Yeshiva and AECOM were aware of Dr. Etgen's acts and omissions, but did nothing to address said acts and omission.

78) Dr. Topalli was injured by Yeshiva, AECOM and Dr. Etgen's joint and several breach of fiduciary obligation, for which injury he seeks equitable relief, including but not limited to his job reinstatement and Dr. Etgen's anti-discrimination and anti-retaliation remedial training. In addition, Dr. Topalli seeks money damages.

## TENTH CAUSE OF ACTION:
## TORTIOUS PARTICIPATION IN BREACH OF FIDUCIARY DUTY

79) Dr. Topalli repeats, realleges as if set forth fully herein, and incorporates by reference the allegations set forth in paragraphs 1 through 78.

80) The Institutional Defendants, despite knowledge and notice of Dr. Etgen's breaches of fiduciary duty with respect to Dr. Topalli, aided, abetted, supported and encouraged her in those breaches by their own previously described tortious conduct, despite their power to halt these breaches of fiduciary duty at will.

81) Dr. Topalli was injured by the Institutional Defendants' tortious participation in Dr. Etgen's breach of fiduciary obligation, for which injury he seeks equitable relief, including but not limited to his job reinstatement and Dr. Etgen's anti-discrimination and anti-retaliation remedial training. In addition, Dr. Topalli seeks money damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY;

AND WHEREFORE, Plaintiff seeks joint and several relief against defendants AECOM, Yeshiva, Dr. Mehler and Dr. Etgen upon the foregoing Causes of Action in the following form and to the following extent:

a) actual damages in an amount to be determined at trial;

b) compensatory damages in an amount to be determined at trial;

c) punitive damages in an amount to be determined at trial;

d) unpaid wages;

e) liquidated damages pursuant to 29 U.S.C. Section 206(b), as well as state law;

f) imputed and special damages in an amount to be determined at trial

g) equitable accounting;

h)   job reinstatement;

i)   court-supervised anti-discrimination and anti-retaliation remedial training for Yeshiva and AECOM's Chairman of the Department of Neuroscience Dr. Don Faber, Chairman of the Department of Pathology Dr. Michael Prystowsky, Associate Dean of Students Dr. James David, M.D., defendant Dr. Mehler and defendant Dr. Eigen;

j)   reasonable attorney fees as provided by statute or law;

k)   prejudgment interest;

l)   costs and disbursements; and

m)   such other and further legal and equitable relief as the court deems just and proper.

DATED:   New York, New York
         February 27, 2008

 
COX PADMORE SKOLNIK & SHAKARCY LLP
Attorneys for Ilir Topalli

By: _____
Steven D. Skolnik, P.C.
Steven D. Skolnik, Esq. (SS-1121)
Cox Padmore Skolnik & Shakarchy LLP
630 Third Avenue, 19th Floor
New York, NY 10017
(212)953-6633